IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEVEN HUGHES | § | |
|     Plaintiff, | § | |
| v. | § | C.A. NO. 4:21-cv-345 |
| | § | |
| SEADRILL AMERICAS, INC. | § | |
|     Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, STEVEN HUGHES, files this Original Complaint and shows:

### I.
### PARTIES

1) Plaintiff STEVEN HUGHES is an individual who resides in Texas.

2) Defendant SEADRILL AMERICAS, INC. is a corporation licensed to do business in Texas which may be served through its Registered Agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

### II.
### JURISDICTION AND VENUE

3) This Court has jurisdiction pursuant to 28 U.S.C. § 1331 based on the federal question at issue.

4) Venue is proper pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in this District.

### III.
### FACTUAL BACKGROUND

5) Mr. Steven Hughes was hired by Defendant SeaDrill Americas, Inc. ("Defendant" or SeaDrill") in December 2012 as a Senior Electrician working on shipping vessels used in connection with offshore drilling in the Gulf of Mexico. Mr.

Hughes is a diabetic who requires certain medication for his medical condition, as well as monitoring for such condition.

6) During his employment, Mr. Hughes complied with all of SeaDrill's medical requirements related to the monitoring of his diabetes and the necessary follow up appointments with his physicians.

7) On January 22, 2016, Mr. Hughes was assigned to work as an Electrical Supervisor on the West Auriga shipping vessel. During such assignment, Mr. Hughes was one of two Electrical Supervisors employed by SeaDrill who was responsible for supervising the electricians and electrical work associated with the offshore drilling. Mr. Hughes' schedule was to work for twenty-eight (28) days offshore after which he would then be relieved by the second Electrical Supervisor for 28 days through and until the assignment was complete.

8) On September 7, 2020, Mr. Hughes reported that he was running a fever, at which point he was required to submit to a Covid test. Notwithstanding that the test was negative for Covid, Mr. Hughes was placed on FMLA leave which began on September 10, 2020.

9) Between September 10 and the end of October 2020, Mr. Hughes was required by SeaDrill to provide medical documentation relating to his diabetes. Mr. Hughes was also asked by SeaDrill to provide follow up documentation much of which had already been requested and provided. Mr. Hughes fully complied with all of the requests but was continually questioned by Human Resources about his diabetic condition and the monitoring of such condition.

10) During October 2020, Mr. Hughes continued to inquire about the status of his return back to work because he had provided all of the documentation requested to do so. During such inquiries, he sensed hostility and anger from the HR representative, Stacy Bordovsky, who would not provide any specific information on a return to work date or if there were any other conditions that needed to be met before his return.

11) At the end of October, Mr. Hughes spoke with Ms. Bordovsky again about his return date. When he was told in a dismissive manner that she had no information, he then asked "Am I being discriminated against now because of my diabetes?". Mr. Hughes then asked "Do I need to look for another job?" at which point he was told that "you can do whatever you want."

12) On or about November 11, 2020, Mr. Hughes was informed in writing that he was released to return back to work. Mr. Hughes then called Ms. Bordovsky and left her a voice mail that he had been released to return to work and that he was ready to do so. Ms. Bordovsky never returned Mr. Hughes' call. Mr. Hughes then left additional voice mail messages about his return to work status.

13) On November 20, 2020, Mr. Hughes received written correspondence from Ms. Bordovsky informing him that he was being terminated based on a job "redundancy" and that his position had been eliminated.

14) Upon information and belief, Mr. Hughes' position was never eliminated.

## IV.
## CLAIMS

**Violations of the Family Medical Leave Act**

15) During 2020, Mr. Hughes was granted leave under the Family Medical Leave Act. Upon his return from such leave, SeaDrill had an obligation to place Mr. Hughes back in his position as Electrical Supervisor. During the medical leave, SeaDrill replaced Mr. Hughes with another employee. When Mr. Hughes notified SeaDrill of his ability to return to work, he was told that his position had been eliminated and he was terminated.

16) SeaDrill failed to return Mr. Hughes to his position which was still available. SeaDrill also retaliated against Mr. Hughes based on the leave and time off he took under FMLA.

## V.
## DAMAGES

17) Plaintiff seeks all damages under FMLA which include:
- Lost back pay and benefits;
- Lost front pay and benefits;
- Compensatory damages;
- Liquidated damages; and
- Attorneys' fees.

The amount of Plaintiff's damages at the time of the filing of this petition is in excess of the minimum jurisdictional limits of this Court.

## VI.
## PRAYER

18) WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, that upon final trial hereof, Plaintiff recovers his actual damages, plus reasonable attorneys' fees and costs of court and for such other and further relief, both general and special, at law and in equity, to which he may show himself justly entitled under all attending facts and circumstances. **Plaintiff requests a jury trial.**

Respectfully submitted,

**SHELLIST | LAZARZ | SLOBIN LLP**

_____

**Mark G. Lazarz**
TBA No. 12069100
**Dorian Vandenberg-Rodes**
TBA No. 24088573

**ATTORNEYS FOR PLAINTIFF**

Of Counsel:

**SHELLIST | LAZARZ | SLOBIN LLP**
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993